IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

OTIS R. ELION,
Petitioner,

v.

Case No. 17–CV–01349–JPG

UNITED STATES OF AMERICA,
Respondent.

## MEMORANDUM & ORDER

### I. INTRODUCTION

This is a proceeding for postconviction relief under 28 U.S.C. § 2255. Before the Court is Petitioner Otis R. Elion's Motion to Vacate, Set Aside or Correct Sentence. The Government responded. Because the Court properly considered Petitioner's 2000 Illinois conviction as a controlled-substance offence, Petitioner's Motion is **DENIED**.

### II. PROCEDURAL & FACTUAL HISTORY

In January 2017, Petitioner appeared before this Court and pleaded guilty to distributing methamphetamine. (Min. Entry at 1, Crim. R.,[1] ECF No. 17). Before sentencing, the Court considered a Presentence Investigation Report ("PSR") prepared by the United States Probation Office. The PSR stated that Petitioner was previously convicted of three controlled-substance offenses. (PSR at 5, 11–12, Crim. R., ECF No. 23). The first was a 1999 Illinois conviction for "Unlawful Delivery of a Look-Alike Substance Within 1,000 Feet of Public Housing Property." (Id.). The second was a 2000 Illinois conviction for "Unlawful Delivery of a Look-Alike Substance." (Id.). And the third was a 2006 federal conviction for distribution of cocaine base.

---

[1] "Crim. R." refers to record documents in Petitioner's criminal case, United States v. Elion, No. 16–CR–40046–JPG–1 (S.D. Ill. Nov. 8, 2016). "Civ. R." refers to record documents in this case.

(Id.). The PSR therefore suggested that Petitioner was a "career offender" as defined by the United States Sentencing Guidelines Manual ("Guidelines Manual"), warranting an enhanced sentence.

Petitioner met with his trial counsel at least four times before sentencing to discuss the career-offender enhancement. (Aff. at 3–4, Civ. R., ECF No. 13–1). Petitioner disagreed with the PSR's suggestion that the Illinois convictions constituted controlled-substance offenses. (Id.). After reviewing the PSR, Petitioner's prior convictions, and the Guidelines Manual, Petitioner's trial counsel determined that although the 2000 Illinois conviction may not constitute a controlled-substance offence, the 1999 Illinois conviction did. (Id. at 5). Accordingly, his trial counsel "determined that argument on the 2000 prior conviction was unnecessary, as the 1999 and 2006, felony drug convictions were qualifying convictions for application of the career offender enhancement." (Id.).

At sentencing, the Court adopted the PSR in its entirety and sentenced Petitioner as a career offender. (Statement of Reasons at 1, Crim R., ECF No. 1). Petitioner then filed a Notice of Appeal with the United States Court of Appeals for the Seventh Circuit. (Not. of Appeal at 1, Crim. R., ECF No. 28). He intended to argue that his trial counsel was ineffective because she failed to object to the Court's career-offender determination. (Mot. to Vacate at 14, Civ. R., ECF No. 1). Ultimately, however, he voluntarily dismissed the appeal, (Mandate at 1, Crim. R., ECF No. 48), electing instead to pursue his ineffective-assistance-of-counsel claim in this Court by applying for habeas corpus, (Mot. to Vacate at 14).

### III. LAW & ANALYSIS

Petitioner's main argument is that his trial counsel erred by not objecting to his career-offender classification. But because Petitioner's 2000 Illinois conviction was a controlled-

substance offense, Petitioner suffered no prejudice. Thus, his ineffective-assistance-of-counsel claim fails.

### A. Legal Standard

Federal prisoners may challenge their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" by applying for habeas corpus. 28 U.S.C.§ 2255.

The Sixth Amendment to the United States Constitution guarantees to each criminal defendant "the Assistance of Counsel for his defence." In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court determined that "the proper standard for attorney performance is that of reasonably effective assistance." Thus, a criminal defendant's Sixth Amendment right is violated when his trial counsel renders ineffective assistance. Id.

To make out a successful ineffective-assistance-of-counsel claim, the petitioner must prove the following: (1) his trial counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. Id. But "[b]ecause of the difficulties inherent in making the evaluation," there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner therefore carries a heavy burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### B. Petitioner's Ineffective-Assistance-of-Counsel Claim Was Not Procedurally Defaulted

In general, a habeas petitioner may procedurally default a claim by failing to raise it on direct appeal. See Bousley v. United States, 523 U.S. 614, 622 (1998). The petitioner may only raise a procedurally defaulted claim if he "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " Id. (internal citations omitted).

An exception to the procedural-default rule arises where the "failure to consider the issue would amount to a fundamental miscarriage of justice." Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000). Ineffective-assistance-of-counsel claims "fit into this mold." Id.; see United States v. Davenport, 986 F.2d 1047, 1050 (7th Cir. 1993) ("[A] defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose."). And in Massaro v. United States, 538 U.S. 500, 504 (2003), the Supreme Court held that ineffective-assistance-of-counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."

The Government cites Massaro for the general procedural-default rule but ignores the Court's holding. As a result, the Government erroneously argues that Petitioner's ineffective-assistance-of-counsel claim is procedurally defaulted because it was not raised on direct appeal. Since challenges to a trial counsel's performance are best brought on collateral review rather than direct appeal, Petitioner's ineffective-assistance-of-counsel claim was not procedurally defaulted.

### C. Petitioner Suffered No Prejudice Because the 2000 Illinois Conviction Was a Controlled-Substance Offense

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. "Even if a defendant shows that particular errors of counsel were unreasonable,

therefore, the defendant must show that they actually had an adverse effect on the defense." Id. at 693.

District courts may apply a sentencing enhancement on criminal defendants that are "career offenders." See U.S. Sentencing Guidelines Manual §§ 4B1.1, 4B1.2 (U.S. Sentencing Comm'n 2016).[2]

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Id. § 4B1.1(a).

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Id. § 4B1.2(b).

Here, the Court determined that Petitioner was a career offender and imposed an enhanced sentence. Petitioner concedes that the first two career-offender requirements were met: He was 48 years old when he committed and pleaded guilty to a three-count indictment for distribution of methamphetamine, a controlled-substance offense. He also concedes that his 2006 federal conviction for distribution of cocaine base was a controlled-substance offense. That said, Petitioner argues that he did not have a second conviction for a controlled-substance offense because the statutes underlying his 1999 and 2000 Illinois convictions are broader than the Guidelines

---

[2] Sections 4B1.1 and 4B1.2 of the 2016 Guidelines Manual, applicable at Petitioner's sentencing, are the same as the current edition.

Manual's definition of "controlled substance offense." He also contends that he raised this issue to his trial counsel before sentencing, yet she elected not to present it to the Court.

Determining whether a prior conviction is a predicate for sentence enhancement is a matter of statutory interpretation. Sentencing courts apply a "categorical approach" to determine whether a prior conviction is a controlled-substance offense under the Guidelines Manual. See Taylor v. United States, 495 U.S. 575, 600–601 (1990); United States v. Montez, 858 F.3d 1085, 1096 n.3 (7th Cir. 2017) (noting that Mathis—Taylor's progeny—applies to career-offender cases). The categorical approach requires the court to "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime . . . ." Descamps v. United States, 570 U.S. 254, 257 (2013); see also Shepard v. United States, 544 U.S. 13, 19–20 (2005) (holding that a conviction based on a guilty plea may also qualify as a predicate offense). If the statute's elements are the same as (or narrower than) those of the generic offense, then it qualifies as a predicate offense. Descamps, 570 U.S. at 257.

If the statute that supported the petitioner's prior conviction is broader than the generic offense, however, then the court must determine whether it is "divisible" or "indivisible." Id. at 261. A statute is divisible if it "comprises multiple, alternative versions of the crime," id. at 262, and lists alternative *elements*—not alternative *means*, Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). " 'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' " Id. at 2248 (quoting Elements, Black's Law Dictionary (10th ed. 2014)). "Means" are the factual circumstances or events that "need neither be found by a jury nor admitted by a defendant." Id. (citing Means, Black's Law Dictionary (10th ed. 2014)). If the statute lists alternative elements, and "at least one, but not all of those crimes matches the generic version," then the sentencing court may use a "modified categorical approach,"

examining a limited set of record documents to determine "which element played a part in the defendant's conviction." Descamps, 570 U.S. at 255. But if the court ultimately determines that the statute consists of "a single, indivisible set of elements," id. at 258, then it does not qualify as a predicate offense, Mathis, 136 S. Ct. at 2251.

The statute underlying Petitioner's 1999 Illinois conviction for "Unlawful Delivery of a Look-Alike Substance Within 1,000 Feet of Public Housing Property" is 720 Ill. Comp. Stat. 570/407(b)(3) (1993). It provides that:

> (b) Any person who violates:
>
> * * *
>
> (3) subsection (e) of Section 401 or Subsection (b) of Section 404 . . . within 1,000 feet of . . . residential property owned, operated or managed by a public housing agency . . . is guilty of a Class 2 felony, the fine of which shall not exceed $200,000 . . . .

Id. Section 407(b)(3) is thus itself an enhancement statute for defendants that violate either § 401(e) or § 404(b) within 1,000 feet of public housing.

The statute underlying Petitioner's 2000 Illinois conviction for "Unlawful Delivery of a Look-Alike Substance" is 720 Ill. Comp. Stat. 570/404(b). It provides that:

> (b) It is unlawful for any person knowingly to manufacture, distribute, advertise, or possess with intent to manufacture or distribute a look-alike substance. Any person who violates this subsection (b) shall be guilty of a Class 3 felony, the fine of which shall not exceed $150,000.

Id. Since § 404(b) is a predicate under § 407(b)(3) (and § 401(e) does not involve look-alike substances), § 404(b) must be a controlled-substance offense for *either* Illinois conviction to qualify as a career-offender predicate.

First, the Court finds that a "look-alike substance" is analogous to a "counterfeit substance." To qualify as a controlled-substance offense under the Guidelines Manual, the statute underlying the prior conviction must "prohibit[] the manufacture, import, export, distribution, or dispensing of a controlled substance (*or a counterfeit substance*) . . . ." U.S. Sentencing Guidelines Manual § 4B1.2(b) (emphasis added). In United States v. Robertson, 474 F.3d 538, 540 (8th Cir. 2007), the Eighth Circuit considered whether a look-alike substance under 720 Ill. Comp. Stat. § 404(b) is analogous to a counterfeit substance under the Guidelines Manual. After examining dictionary definitions, the court determined "that the plain meaning of counterfeit has two essential components: (1) made in imitation and (2) intent to deceive." Robertson, 474 F.3d at 541. And Illinois defines "look-alike substance" as:

> [A] substance, other than a controlled substance which (1) by overall dosage unit appearance, including shape, color, size, markings or lack thereof, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe that the substance is a controlled substance, or (2) is expressly or impliedly represented to be a controlled substance or is distributed under circumstances which would lead a reasonable person to believe that the substance is a controlled substance.

720 Ill. Comp. Stat. 570/102(y). The court then concluded "that both definitions of 'look-alike substance' provided in the Illinois code satisfy the plain meaning of counterfeit." Robertson, 474 F.3d at 541. For these reasons, the defendant's look-alike conviction under § 404(b) qualified as a controlled-substance offense under the Guidelines Manual. Id. The Court is persuaded by the Eighth Circuit's analysis. Indeed, the Seventh Circuit came to the same conclusion after examining a similar Indiana statute. See United States v. Hudson, 618 F.3d 700, 704 (7th Cir. 2010).

Next, the Court must use the categorical approach to compare the generic definition of "controlled-substance offense" with § 404(b). The Guidelines Manual defines controlled-substance offense as "an offense under federal or state law . . . that prohibits the manufacture,

import, export, distribution, possession, or dispensing of a controlled substance (or a counterfeit substance) . . . ." U.S. Sentencing Guidelines Manual § 4B1.2(b). Together with those prohibitions, however, § 404(b) also criminalizes the *advertisement* of a look-alike substance. Since § 404(b) criminalizes a broader swath of behavior than the generic definition, it cannot qualify as controlled-substance offence unless it is divisible.

Section 404(b) is divisible because it comprises multiple, alternative elements, rather than a single, indivisible set of elements. Petitioner argues, however, that § 404(b) is indivisible because the definition of "advertise" in § 404(a) includes alternative *means* to advertise. But focusing on whether there are alternative means to advertise ignores the fact that advertising is itself an alternative *element*. Manufacturing, distributing, advertising, or possessing a look-alike substance with intent to manufacture or distribute are not merely "illustrative examples"—they are alternative elements that a jury must find to convict a defendant. See Mathis, 136 S. Ct. at 2256. Section 404(b) therefore does not set out alternative means of commission but lists multiple alternative elements that violate the statute.

The record documents associated with Petitioner's convictions also suggest that § 404(b) is divisible. The Court may take "a 'peek at the [record] documents' . . . for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.' " Mathis, 136 S. Ct. at 2256–57 (quoting Randon v. Holder, 782 F.3d 466, 473–74 (9th Cir. 2015)). Petitioner's 1999 Bill of Indictment states that he "knowingly and unlawfully *delivered* to a confidential source of the Mt. Vernon Police Department a look-alike substance." (Gov't's Brief, Ex. A at 10, Civ. R., ECF No. 13–1) (emphasis added). The 2000 Information stated the same. (Id. at 16). By listing one alternative—distribute—to the exclusion of the others, the record documents suggest

that § 404(b) "contains a list of elements, each one of which goes toward a separate crime." Mathis, 136 S. Ct. at 2257.

Finally, since all but one alternative element in § 404(b) matches the generic definition of controlled-substance offense, the Court may employ the modified categorical approach to determine which statutory phrase was the basis for Petitioner's conviction. "The Court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative elements used in the case) with the elements of the generic crime." Descamps, 133 S. Ct. at 2284.

Petitioner's 2000 Illinois conviction for "Unlawful Delivery of a Look-Alike Substance" was a controlled-substance offense. As discussed, Petitioner was charged with "deliver[ing] . . . a look-alike substance." And " *[d]istribute' means to deliver* . . . a controlled substance." 720 Ill. Comp. Stat. § 570/102(r) (emphasis added); accord id. § 404(a)(2). The elements in Petitioner's 2000 Illinois conviction therefore align with those under the Guidelines Manual: Petitioner was convicted under a divisible state statute that prohibits the distribution of a counterfeit substance. Thus, Petitioner was properly classified as a career offender. Since Petitioner's 2000 Illinois conviction qualifies as a career-offender predicate, further analysis of the 1999 Illinois conviction is unnecessary.

Petitioner's ineffective-assistance-of-counsel claim fails because he cannot prove that he was prejudiced. The Court need not determine whether Petitioner's trial counsel exercised "reasonable professional judgment"—even if his trial counsel failed to adequately investigate the career-offender classification, Petitioner was not prejudiced because his career-offender classification was ultimately correct.

## IV. CONCLUSION

Petitioner's Motion to Vacate, Set Aside or Correct Sentence is **DENIED**. The Court **GRANTS** Petitioner a Certificate of Appealability.

**IT IS SO ORDERED.**

**Dated: Thursday, April 2, 2020**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
